for the day, 23-6028, United States v. Harrison. Mr. Krager. Thank you, Your Honor, and may it please the Court, Stephen Krager on behalf of the United States. I will endeavor to try and reserve at least three minutes for rebuttal. Approximately 22 months ago, the district court granted Mr. Harrison's motion to dismiss the indictment in this case and found that 18 U.S.C. section 922G3 is unconstitutional. Section 922G3, as the Court knows, is the federal prohibition on the possession of firearms by unlawful users. Could you pull the microphone over a little bit? Thanks. Sorry. As this Court's aware, section 922G3 is the federal prohibition on the possession of firearms by unlawful users of controlled substances. The biggest development in the law in the last 22 months with regard to this case is the Supreme Court's decision in the United States v. Rahimi. In Rahimi, the Supreme Court explained that the Fifth Circuit made a couple of mistakes, a couple of large mistakes. The first mistake that Rahimi identified that the district court made a similar mistake has to do with the scope and with how to apply either a facial or an as-applied challenge. So let me stop you there, and you'll recall the facial as-applied from the last time you were at the podium. So do we have an as-applied challenge, or does the government concede that we have an as-applied challenge? So, Your Honor, I think in this instance, if I can work my way into answering the question. Sure. I think this case presents what this Court in the United States v. Supreme Court of New Mexico called a duality of claims. It presents a partial facial challenge, a partial as-applied challenge. So, for example, at page 12 of Mr. Harrison's response brief, as well as pages 1 and 3 of his supplemental brief, Mr. Harrison argues that Section 922G3 is unconstitutional as applied to him as an unlawful user of marijuana. I'm sorry. As an unlawful user of marijuana or an alleged unlawful user of marijuana. So to the extent that we're talking strictly about marijuana, I think this Court's view would be restricted to marijuana only. But to the extent, do we apply a facial standard or do we apply an as-applied standard? In Supreme Court of New Mexico, this Court explained that where there's such a duality of claims, this Court will apply the standard from the facial challenge, but only to the extent that the law impacts the challenged class. So I think the best way of describing, I think, the issue as it's ultimately developed is whether Section 922G3, to the extent that we're talking about unlawful users of marijuana, is facially constitutional. What's an unlawful user of marijuana? In New Mexico or in Colorado? I almost get high walking down the street here. So this Court in Morales-Lopez explained that it has to be somebody who has a regular and ongoing use of marijuana. I'm sorry. Somebody that has, who regularly and ongoingly uses marijuana. How often? This Court has not been entirely clear about how often. What's the government's position on that? If I use it once? I would say if you use it only once, probably not. Not be an unlawful user. Maybe I should say, to the extent that you are using it and simultaneously have possession, you probably fall within the ambit of 922G3. You've just wiped out half of Colorado. Well, Your Honor, notwithstanding Colorado's decision to decriminalize marijuana, it is still a Schedule I controlled substance under federal law. Well, at the very least, marijuana users consists of contemporaneous users, which we say is, you know, from time to time, and actively intoxicated marijuana users, right? Correct, Your Honor. Here's where I'm stuck at the very outset of this case, which is sort of an antecedent procedural question. We're on a motion to dismiss the indictment. Typically, we're confined to the four corners of the indictment, which here is charged as marijuana use, Mr. Harrison's unlawful marijuana. He's a marijuana user. The case was litigated, and the district court's decision seems to rely on understanding marijuana users as being both contemporaneous users and non-intoxicated marijuana users as applied to Mr. Harrison. In other words, the fact of Mr. Harrison's non-intoxication seems to be an undisputed fact in this case that's outside the indictment. So what I'm asking for is for you to help me understand whether we're in the four corners, or we're in the four corners plus the undisputed fact of Mr. Harrison's non-intoxication. So, Your Honor, as far as within the four corners, or even within the four corners plus the findings that the district court made, whether Mr. Harrison was intoxicated or not was never litigated, was never fully addressed. It's what this court in Pope called a latent factual dispute. But the government never made that point until your supplemental briefing in a footnote. So did you waive the argument that I think you righteously had at one point that, you know, district court, it's premature, kind of like you argue vagueness. It's premature to adjudicate this Second Amendment challenge because we don't know whether Mr. Harrison was a non-intoxicated user. And without knowing that, it's too soon to know whether he has a complete defense. So under our case law, this needs to proceed. You never made that argument. Well, Your Honor, so two responses to that. First, to the extent we're talking about in Pope and also in Reese, this court explained that there has to essentially be a stipulation. So there has not been a stipulation as to the fact that Mr. Harrison was not intoxicated. And so the district court, as a matter of law, could not determine that he was not intoxicated. The second response goes to what the Supreme Court explained. Back up to that first response. I did not follow what you were arguing there. So let me give you an example. You have the prerogative of indicting however you want to. And you did not indict saying he was intoxicated. You said he was a marijuana user. Correct, Your Honor. Okay. And so now what are you saying, that you can't assume he was not intoxicated? Your Honor, what I'm saying is the indictment does not allege whether he was intoxicated or was not. Well, whose fault is that? Well, Your Honor, intoxication is not an element of the offense, so it's not required to be alleged in the indictment. That being said, what this court said in Pope is even if there are latent factual disputes that may determine whether or not there is a constitutional question or an as-applied challenge, those latent factual disputes preclude under Rule 12 the determination of a pretrial as-applied, at least as specifically applied to facts that either aren't alleged in the indictment or there's not a stipulation to. You never made this argument to the district court. Your Honor, the arguments that were made to the district court were on a higher level that did not address the specifics of really Mr. Harrison's situation. We were comparing at the time historic laws to current law. We weren't saying as applied to the specific instance. But then I guess what I'm trying to understand is why did the district court go into so much effort to understand whether there was a historical tradition of disarming the non-intoxicated if that was not part of the case yet? Well, Your Honor, I would submit that that goes into the second problem or the other problem that the Supreme Court in Rahimi noted with the Fifth Circuit's opinion, which is like the district court here, the Fifth Circuit was looking at how there could be conflicts. I believe, as I argued in one point, the district court was looking to the least culpable conduct to invalidate the entire statute. For example, the district court relied on the fact that 400,000 Oklahomans had state authorization to use medical marijuana. But the record at least was clear that there's no evidence that Mr. Harrison had any state authorization to use medical marijuana. The district court specifically at page 123 of the appendix, but note 119, expressly declined to consider the facts of Mr. Harrison's case. As far as intoxication goes, the facts of the district court— expressly clear or implicitly clear that you viewed this as a facial or as this hybrid that you've talked about, kind of one foot in as applied and one foot in facial? Your Honor, I would submit that there wasn't much clarity throughout the entire district court process about whether this was a facial challenge or an as applied challenge. Specifically as to the— So, as far as you could tell, it was maybe wholly or some part as applied. Oh, yeah, and this is the situation this was presented in— Wait, wait, wait. You can go on, but I want you to know. You saw that it could have been in whole or in part as applied. Your Honor, Mr. Harrison, other than addressing marijuana, didn't really talk about any of the specific facts of his case on the district court plea— What did your filings indicate? That's what I'm saying. What's your filings in district court? We did not address whether this was facial or as applied, and I don't think that ultimately creates a problem because— Well, it raises this problem for me. So, you don't address which it is. It's got to be one or the other or this hybrid, and so you're at risk. So, did you ask for an evidentiary hearing so that you could put on other evidence other than what was alleged in the indictment? No, Your Honor, I don't believe we did. And generally— So, if this is remanded in order to conduct an as applied analysis consistent with Morales-Lopez, are you precluded from putting on evidence and you're stuck with the record you got? No, Your Honor. The reason why I would say that is in light of this court's decision in Pope, the factual—and even in Reese— the factual development for an as applied challenge in a criminal case is that trial. It's not— Okay, but here's the problem. Here's what Pope says. Pope says that we typically don't examine facts outside the indictment when you're on a motion to dismiss, but we may when the operative facts are undisputed, the government fails to object to the district court's consideration of the undisputed facts and the district court can determine from them as a matter of law that the government can't prove its case. So, here, the undisputed fact that the litigation history seems to prove up is that Mr. Harrison was not intoxicated. That's how the district court understood it. That seems to be how you understood it. The government understood it. And you said that—when I asked you about waiver, you said, well, there has to be stipulation. This says you failed to object. The way that I read the record is this was available to you, to the government, but you didn't invoke it. And so now we are—the runway is clear for us to understand this as a hybrid, as this sort of duality with a fact that's not on the face of the indictment, meaning is this statute constitutional as applied to Mr. Harrison, who was a non-intoxicated user of marijuana? Why is that wrong? So, pushing back on the factual for a moment, I would submit the undisputed facts that were presented and that were outlined by the district court was that Mr. Harrison was alone in the vehicle, that there was an odor of burnt marijuana, that there were two partially smoked marijuana cigarettes in the container. Now, later on, the district court distinguished non-intoxicated, but the district court also distinguished carrying, but there was no dispute. In fact, the district court specifically found that Mr. Harrison was carrying. But going past that, even—let's assume for purposes of argument, and my time is running low— You'll be okay. —that we get to he's not intoxicated. Whether or not somebody's intoxicated, ultimately based on the historical record, would be essentially the mold or the twin of historic laws. Rahimi was clear there doesn't have to be such a mold or— You're skipping ahead. I just—I really want to—I'm so stuck here, and I'm really looking for your help on how to understand how we even proceed into the Rahimi-like analysis here, which is if the normal course of operations on a motion to dismiss the indictment is four corners, here that's marijuana users, unless there's an undisputed fact that the government doesn't object to that is essential to understanding the viability of the defense. Here that is whether Mr. Harrison was not intoxicated. Why is it wrong to understand this case as proceeding from that premise, that we have to decide whether the statute applies constitutionally to someone who is not intoxicated marijuana user? You're right. So, again, two responses, and I see I'm out of time if I can— Please do, yeah. I think to address the primary question that you asked, there was never an explicit assertion that— I believe there was never an explicit assertion that Mr. Harrison was not intoxicated, other than the district court ultimately concluding that the armed intoxication laws do not count because somebody subject to 922 G3 does not have to be intoxicated. What the district court did there, and I go back to the carrying example, the public carrying example, the district court said, I'm not going— Finally, I found that he was publicly carrying the firearm, but for purposes of addressing the statute, I'm going to treat this as mere possession. And so it also rejected the armed intoxication laws because they dealt with use and carrying, not mere possession. But the record here specifically, and I think there is no objection, no opposition either way on this, is that Mr. Harrison was carrying the firearm publicly. And so the district court's analysis was not an analysis where it talked about this could be committed by somebody who's not intoxicated. It wasn't addressing specifically Mr. Harrison, but was addressing the statute as a whole, and specifically was addressing the least culpable conduct. So the district court was addressing mere possession of the firearm by someone who's not intoxicated. What the Supreme Court in Rahimi explained is that where the Constitution and a statute come up against each other, the court's ultimate goal is not to— or is to find, essentially commonality, I forget the exact phrase, not to try and find conflict. What the district court ultimately did here was try and find that conflict. And each time it found a conflict, it discarded a statute, or it discarded a predicate. And so what—I would welcome even the opportunity for remand for Judge Wyrick to consider this post-Rahimi. But ultimately, what the district court did here was commit the same errors that the Fifth Circuit did. Thank you, Counsel. Thank you very much. May it please the Court. Laura Duskin for Defendant Mr. Harrison. Good morning. I'll get straight to the—our view as to whether it's facial or as applied is that this was an as-applied holding, and exactly as you stated. So, yes, it was an indictment that specifically challenged marijuana use, and we did have undisputed facts. At trial, they would only have to prove that Mr. Harrison was a marijuana user. They wouldn't even have to prove that he was intoxicated at the time. But if you were to have— so I don't think that could have been resolved properly at trial, but through some sort of evidence you're hearing, that, as you said, was not requested. And I do not believe they can— Well, he admitted he was a user. Yes, that's correct. I don't think—and we do not dispute that he's a user. He doesn't either. No, he is a marijuana user. But doesn't your challenge to the— your Second Amendment challenge as applied here mean that we would be considering whether the statute is constitutional as applied to marijuana users, meaning users who are, what, both contemporaneous and intoxicated at the time? In our situation, he was not intoxicated, so we're asking for it to be as applied to marijuana users. Okay. So your position is that the fact of non-intoxication is in the mix? Yes. Why? Because those are the undisputed facts. And is that because the government hasn't argued Pope? I mean, I'm just—I'm really trying to get clarity around the procedural— you know, the antecedent procedural question. We're at Rule 12. We're usually confined to the four corners. What do we do with this fact of non-intoxication? Well, because in this case, so we had a— we had a motion to dismiss the indictment, the indictment alleged marijuana use. We also had within the mix, at the time we were alleging, we made the vagueness challenge. And at the top of the motion, we discussed the facts of the case, which include everything that you've already stated did not include that he was intoxicated at the time. And I do believe everybody agreed they could not prove it. There were not field sobriety tests. There was no allegation that he was under the influence at the time. You had this, you know, smell of maybe burnt marijuana, I think it was, but nobody alleged that he had just smoked it. And certainly I can tell you that in Oklahoma, if they thought that he had been driving while he was under the influence of marijuana, they would have engaged in what they do, the field sobriety test, and charged him with DUI. And none of that happened. And if this went, were to go back on remand, I think we'd be right back here because they cannot prove that. Is it because the government can't prove it or that they have waived the argument under Pope? It's both, frankly. They waived the argument because they did not, there was an entire hearing before Judge Wyrick, essentially just oral argument. And before him, marijuana was clearly at issue. It was discussed at length. And nobody said, hold up, Judge. We have proof that he was intoxicated at the time. We have evidence that we want to bring forward. None of that happened. They also could have, my colleague brought forth in the initial argument on G9 that, well, Mr. Autry should have brought forward a motion for reconsideration. In this case, the government did not do that. We've just been sitting here on a ruling stating that 922 G3 is unconstitutional as applied to Mr. Harrison as a marijuana user. So I think that that's where we stand, the four corners plus the undisputed facts. You didn't get into- Would this be an abnormal as applied case if we sent it back and said, do an as applied analysis, but you're limited to the specifics of what's alleged in the indictment. No more, nothing else. That would be an odd as applied proceeding, wouldn't it? Yes, it would. It would be. It's a type, I suppose, like quasi as applied. You're just talking about 922 G3 facially, blanket, and every possible iteration of 922 G3, you would be talking about 922 G3 as applied to a marijuana user, period. So I would consider that like a quasi as applied, which I think that Judge Wyrick was kind of doing somewhat of both here. He was discussing marijuana users as a whole, while also mentioning that Mr. Harrison himself was not intoxicated at the time. And I don't think that- and 922 G3 doesn't require that. It does not require that somebody be intoxicated at the time. I'd like to then get to some of the next part of the analysis, the historical analysis. The government has stated in this case and in many cases across the country that there is a- that the legislature may categorically disarm anyone that it deems dangerous based in the history that they base that on. In our case, it's Catholics and Loyalists. At the district court, they also included blacks, slaves, freedmen. I take issue with that as being a proper historical precedent here. We have to find something that is irrelevantly similar, and Loyalists, Catholics, slaves, those are not relevantly similar to marijuana users by a stretch, nor is any justification for disarming them. I think that Rahimi kind of put that argument to bed as to Catholics. You have Catholics, Loyalists. These are arguably groups that were considered outside of the people anyway at the first step, and they were considered political insurrectionists. Why were we afraid of them? Why did they want to disarm them? Because they were worried they were going to overthrow the country. And as to slaves and freedmen, they at the time were not even considered a part of the people and certainly not part of our political community. But with the Catholics and the Loyalists example, why does that not support the historical tradition of disarming those who are likely in the future to be dangerous? Because it's much too broad. I think it becomes untethered to any sort of limiting principle that the legislator allows the government to simply decide that broad categories of people are presumptively dangerous without any evidence of that being so and without any chance to prove otherwise. And so I think that is just wildly out of step with the disarmament of Catholics and Loyalists. Do you have cases that support your understanding of how to read those particular historical sources? We have the Third Circuit and Range on the felon in possession. They rejected those as being a proper analogy. And I believe also, well, we have the Third Circuit and Connolly. But they were sort of, that was also the G3 case. And I do take a little bit of issue with the way that the Fifth Circuit resolved that. It seems like then what they're asking for is a, it's not clear, but a dangerousness hearing in each individual case. And I think that becomes really difficult in practicality because then it also allows the government to simply arrest anybody with marijuana who's a marijuana user that they find out has a gun. You could round them up en masse and then have individual hearings to decide who's dangerous and who's not. And that seems very out of step with the Second Amendment and a little bit of a scary proposition. Go ahead, please. But your concern about disarming Catholics and Loyalists is because it's too general. But those laws were in effect, and we have to consider them when we consider whether they're historical analogs. You would agree, okay, so you have this law that's prohibiting these Catholics, of all things, because they might be dangerous. But it's clear that all Catholics were not dangerous, and yet they interdicted them or they disarmed them. So why doesn't that make it an applicable analog to disarming users because they might be dangerous? Because the Second Amendment repudiated that. It was like the Second Amendment was an answer to that, and that disarmament of Catholics no longer became possible once you have this Second Amendment in place. That's why. I mean, the English government was suspicious of Catholics. The Americans were concerned with Loyalists overthrowing the government, and you could prove that you were loyal through a hearing or through somebody individually deciding that you weren't a problem. Whereas with this marijuana user, 922G3, you don't have that opportunity. It's just a blanket. You become, at some point, where I would argue that most marijuana users in this country who have firearms in the home or perhaps in a car have no idea that they're violating federal law by having such a firearm. What did the district court do with the Catholic Loyalists' body of evidence? I thought the district court was focused more on disarming those who acted violently in the past and so didn't think that that evidence was relevant. Yes, I would agree. Okay. Why is that not wrong? I mean, if we're thinking about the statute here as applying to non-intoxicated marijuana users, I think the government tried to show that non-intoxicated marijuana users are still violent and dangerous people. I mean, that might be wrong, but the district court just didn't engage with that body of evidence or the historical record because I think it was misdirected in its identification of the historical principle. It thought the historical principle was those who acted violently in the past. So why isn't there an error there? I mean, shouldn't we send this back to the district court to look at, say, no, no, that evidence is relevant, the historical Catholic Loyalist evidence is relevant to discerning what the historical principle is, and the government tried to show that non-intoxicated marijuana users, which is the focus of the challenge, are actually disproportionately violent. They submitted empirical, social science, et cetera. District court disregarded all that under Bruin. Why isn't that an error that is correctable here on remand? Well, I think that that's because the Catholic in Rahimi, they largely disregarded the government's arguments there, saying they were disarmed for different reasons. You have to have a comparable how and a comparable why, and the comparable why here is different. You disarmed Catholics, you disarmed Loyalists because you viewed them as a political threat, and that is not the case with marijuana users. So the principle to be pulled from that is not, in fact, that we just disarm people because the government can decide whoever it wants is presumptively risky. It's that we disarm people who they turned then to the surety laws, to going armed laws, to show that we disarm people who have demonstrated that they are a danger with firearms. And that is why Rahimi, why 922 G-8 was upheld, only as to the one prong, the C-1. But we don't have any of that with 922 G-3. It's just wildly dissimilar and a different and not a comparable why is my answer to that. I'm out of time. I'm happy to give you another minute since your adversary went a little over. Thank you. I know that their other argument is that marijuana users are akin to the mentally ill. What kind of marijuana users? Non-intoxicated marijuana users? They did not say. They just said marijuana users. And they actually keep referring just to controlled substance users in general. But I am confining this to marijuana users. Doesn't that break down when you talk about alcohol and alcoholics? Doesn't it break down? Yeah. In other words, doesn't the whole theory break down? And if a recovering drunk can carry a gun, then why can't a non-intoxicated marijuana user carry a gun? Yes. And that's exactly what the Fifth Circuit did hold in their Connolly case. They compared that exactly saying, what is a marijuana user more like, an alcoholic or anybody else? And the answer is they're more like an alcoholic, and we certainly do not go around disarming alcoholics. And also, where is the line there? Is it that they have to have two or three drinks a day? Or when does somebody become, quote, unquote, an alcoholic? And also here, importantly, I think, is that they have not alleged that Mr. Harrison is an addict. He is charged with being a marijuana user. And a lot of their arguments going towards the mentally ill would be perhaps more akin to somebody who is an addict, such that they're a habitual user to the point that they lose control of their functions. So I don't see that as a relevant analogy, not analogous enough. Do I have more time? I think we understand your argument. Okay. Thank you. Thank you. Okay. Thank you. The case will be submitted. Thank you for your helpful arguments. And the court will be in recess until tomorrow morning. Court is in recess.